UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE:

SUPERIOR BOAT WORKS, INC.,                                    CASE NO. 09-15836-NPO

DEBTOR.                                                       CHAPTER 11

MEMORANDUM OPINION AND ORDER
REGARDING MOTION FOR DETERMINATION OF
ADMINISTRATIVE EXPENSES OF L. BRENT ENTERPRISES, INC.

This matter came before the Court for hearing on October 11, 2012 (the "Hearing"),[1] on the Motion for Determination of Administrative Expenses of L. Brent Enterprises, Inc. (the "Motion") (Dkt. 281), the proposed Order (Dkt. 354), and L. Brent Enterprises, Inc. Proposed Findings of Fact and Conclusions of Law (Dkt. 484), filed by L. Brent Enterprises, Inc. ("Enterprises") in the above-referenced case. No objection to the Motion was filed. At the Hearing, Edward D. Lamar represented Enterprises, and William R. Armstrong, Jr. ("Armstrong") represented the Debtor, Superior Boat Works, Inc. ("Superior").

Enterprises contends that its claims for reimbursement of attorney's fees and costs, totaling $18,539.00, are administrative expenses under 11 U.S.C. § 503(b) and, therefore, deserve priority status in the distribution of Superior's assets because they constitute either "actual and necessary costs" of preserving the bankruptcy estate or, in the alternative, compensation awarded under 11 U.S.C. § 330. The Court, having heard testimony and having considered the arguments of counsel, announced its decision from the bench at the Hearing that

---

[1]That same day, the Court held a confirmation hearing on Superior's Amended Plan of Reorganization (Dkt. 449), which is the subject of a separate opinion. *See* Memorandum Opinion and Order Regarding Confirmation of Amended Plan of Reorganization (Dkt. 500).

Page 1 of 11

Enterprises was not entitled to an administrative expense claim. This Opinion memorializes and supplements that oral ruling:[2]

## Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B). Notice of the Motion was proper under the circumstances.

## Facts

1.  Superior was a Mississippi corporation that repaired and constructed ships and barges at a small shipyard located in Lake Ferguson, Washington County, Greenville, Mississippi. Superior is owned by Edwin Lea Brent and Collins Brent. Its president is Collins Brent.

2.  Enterprises is a Mississippi corporation with its principal place of business in Washington County, Mississippi. Its president is Edwin Lea Brent, who is also part owner of Superior.

3.  On September 5, 2008, 4 H Construction Corporation ("4 H") filed a Complaint in Admiralty seeking monetary damages and the recovery of two barges from Superior and Collins Brent. 4 H alleged that in mid-July 2008, Superior and Collins Brent refused to release its barges after 4 H disputed the amount of Superior's bill for certain repairs. R. Brittain Virden ("Virden"), an attorney with the law firm of Campbell Delong, LLC, defended Superior and Collins Brent in that litigation. On September 11, 2009, the U.S. District Court entered a Final Judgment (Dkt. 484-1) in *4 H Construction Corporation v. Superior Boat Works, Inc., Collins Brent d/b/a Superior Boat Works, Inc., and Barges PB-0612 and PB-0604*, 659 F. Supp. 2d 774

---

[2] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

(N.D. Miss. 2009) (hereinafter, the "*4 H Lawsuit*").  The U.S. District Court ruled that Superior and Collins Brent were liable jointly and severally for the conversion of the barges and ordered them to pay 4 H damages in the amount of $17,875.00 and to return the barges.  *4 H Lawsuit*, 659 F. Supp. at 783.  The U.S. District Court dismissed counterclaims brought by Superior and Collins Brent for breach of contract, *quantum meruit*, and misrepresentation on the technical ground that Superior had been administratively dissolved and, therefore, was not a viable entity when the alleged contract for repair work was formed.  *4 H Lawsuit*, 659 F. Supp. at 778-79.  In an Order (the "Order") (Dkt. 484-2) dated October 26, 2009, the U.S. District Court denied the Defendants' Motion to Alter or Amend Findings of Fact and Conclusions of Law and Judgment or for a New Trial (the "Motion to Amend"), filed by Superior and Collins Brent.

4.  On November 4, 2009, before Superior had filed its bankruptcy petition, Enterprises paid Virden and Armstrong retainers in the total amount of $18,539.00.  (Aff. of Lea Brent, Dkt. 281-1).  These pre-petition retainers appear to be "classic" retainers, meaning that they were earned by Virden and Armstrong upon payment.  *See In re Viscount Furniture Corp.*, 133 B.R. 360, 364 (Bankr. N.D. Miss. 1991) (describing different types of retainer agreements). Specifically, Enterprises paid Virden $7,500.00 to appeal the Final Judgment and Order rendered in the *4 H Lawsuit* and paid Armstrong $11,039.00 to handle Superior's bankruptcy.  In a letter (Dkt. 484-3) to Edwin Lea Brent, Collins Brent, and Superior, Armstrong reminds them of their agreement to pay him an "initial retainer" in the amount of $10,000.00, plus his expenses, including any filing fees.  There are no exhibits showing that Superior agreed to reimburse Enterprises for payment of these fees.

5.  As previously noted, Virden has defended Superior and Collins Brent from the commencement of the litigation of the *4 H Lawsuit*, in September, 2008. Virden continued his

representation after entry of the Final Judgment, and filed notices of appeals on behalf of Superior and Collins Brent in the *4 H Lawsuit* on November 5, 2009. (Dkt. 484-4).

6. Armstrong filed Superior's voluntary petition for relief under chapter 11 of the U.S. Bankruptcy Code[3] on November 6, 2009. (Dkt. 1). At that time, Armstrong paid Superior's filing fee in the amount of $1,039.00.

7. In the Disclosure of Compensation of Attorney for Debtor (Dkt. 23), Armstrong stated that he had been paid $11,039.00 in compensation for services rendered Superior in connection with its bankruptcy case. *See* 11 U.S.C. § 329. Superior submitted an application seeking the Court's approval of Armstrong's employment as its legal counsel. (Dkt. 44). The Court approved the application pursuant to § 327 in an Order Authorizing Debtor to Employ Attorney.[4] (Dkt. 57).

8. Virden has never sought approval from the Court to continue representing Superior in the *4 H Lawsuit*. Virden filed a Notice of Bankruptcy in the *4 H Lawsuit* on November 9, 2009. (Dkt. 484-5).

9. As of the date of the Hearing, Enterprises has not been reimbursed for the payments to Virden or Armstrong and has not filed proofs of claims in Superior's bankruptcy case.

10. Enterprises filed the Motion seeking allowance of its reimbursement claims as administrative expenses in the total amount of $18,539.00 under § 503(b)(1)(A) or, in the alternative, § 503(b)(2).

---

[3]Hereinafter, the "Code" refers to the U.S. Bankruptcy Code found at Title 11 of the U.S. Code, and all code sections refer to the Code unless specifically noted otherwise.

[4]Since then, Armstrong has requested and received interim compensation from the estate for his postpetition services (*See* Dkts. 270, 387, & 494).

**Discussion**

Section 503(b) lists nine categories of "expenses and claims" that are deemed allowable administrative expenses. 11 U.S.C. § 503(b). Claims that are allowed as administrative expenses under any category of § 503(b) are entitled to receive priority treatment in the distribution of the assets of the bankruptcy estate.[5] 11 U.S.C. § 507(a)(2). In a chapter 11 case, such as this one, the debtor generally must pay administrative expenses in full on the effective date of the plan. 11 U.S.C. § 1129(a)(9)(A) (requiring that administrative expenses be paid cash equal to the amount of the claim on the effective date of the plan).

The crux of the present dispute is the proper classification of Enterprises' claims for reimbursement. Are they prepetition claims entitled to the same treatment as other general unsecured claims or are they postpetition administrative expenses entitled to priority treatment? Enterprises contends in its Motion that its claims fit within two of the nine categories of administrative expenses: § 503(b)(1)(A) (actual and necessary costs) and/or § 503(b)(2) (compensation awarded by the court). Before addressing the merits of its argument, the Court notes that Enterprises bears the burden of persuasion by a preponderance of the evidence that its claims are administrative expenses entitled to priority treatment. *Toma Steel Supply, Inc. v. TransAmerican Natural Gas Corp. (In re TransAmerican Natural Gas Corp.)*, 978 F.2d 1409, 1416 (5th Cir. 1992).

**A.    § 503(b)(1)(A)**

Enterprises' primary argument in its Motion rests upon § 503(b)(1)(A), which allows as a category of administrative expenses "the actual, necessary costs and expenses of preserving the

---

[5]Under § 507(a)(2), administrative expenses are second in priority to domestic support obligations. 11 U.S.C. § 507(a)(2). In the instant matter, because Superior has no domestic support obligations, administrative expenses will be first in priority.

estate." 11 U.S.C. § 503(b)(1)(A). Examples of allowable administrative expenses under § 503(b)(1)(A) include "wages, salaries, and commissions for services rendered after the commencement of the case."

The Fifth Circuit construes the words "actual" and "necessary" narrowly, given that the priority treatment of administrative expenses often reduces the funds available for payment of general unsecured claims. *NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 966 (5th Cir. 1991). "In order to qualify as an 'actual and necessary cost' under section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the trustee that benefited the estate." *Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.)*, 258 F.3d 385, 387 (5th Cir. 2001); *see also Lasky v. Phones For All, Inc. (In re Phones For All, Inc.)*, 288 F.3d 730 (5th Cir. 2002) (claim for severance pay that arose from a prepetition agreement was not entitled to postpetition administrative priority status). Although the "benefit" qualification is not expressly found in § 503(b)(1)(A), it is a means for testing whether an expense qualifies as an "actual and necessary cost" to preserve the estate. *Tex. v. Lowe (In re H.L.S. Energy Co.)*, 151 F.3d 434, 437 (5th Cir. 1998). If an expense is of no "benefit," it cannot be "necessary." With these standards in mind, the Court considers the handling of the bankruptcy case by Armstrong and the filing of the appeals by Virden separately to determine whether Enterprises' claims for reimbursement of the fees for their services arose postpetition and whether their services benefited Superior's estate.

    **1.    Armstrong**

According to Enterprises, its expenditure to retain Armstrong as counsel to handle the filing of Superior's bankruptcy case preserved the value of Superior's estate. (Prop. Findings at 5). Enterprises does not describe the nature of the services provided by Armstrong in greater

detail, but apparently they involve the actual filing of Superior's bankruptcy petition and the preparation of its bankruptcy schedules.

For an expense to be accorded administrative priority, it must generally derive from a postpetition transaction with the debtor.[6] This means that the services must generally benefit the bankruptcy estate, not the entity that later becomes a debtor or that assumes the status of a debtor in possession. Significantly, the estate comes into existence only when a bankruptcy case is commenced by the filing of a petition for relief. 11 U.S.C. §§ 301-303. It is for this reason that § 503(b)(1)(A) states that it applies to "services rendered *after* the commencement of the case." 11 U.S.C. § 503(b)(1)(A) (emphasis added).

In the instant case, Enterprises incurred the expense to retain Armstrong *prior* to Superior's bankruptcy. Thus, the expenditure could not have bestowed a benefit on the estate, given that Superior's estate did not yet exist. (Armstrong has in fact received compensation for his postpetition services from Superior's estate. (*See* Dkts. 270, 387, & 494)).

Denying Enterprises' claim for reimbursement with respect to the retainer it paid Armstrong prepetition is consistent with the intent of § 503(b)(1)(A), which is to encourage third parties to provide goods and services to the debtor so that the debtor can successfully reorganize its business. *Toma Steel Supply*, 978 F.2d at 1416. Once reorganized, the business is expected to generate funds to pay the prepetition creditors. *Id.*

---

[6]There are exceptions in § 503 where compensation for prepetition services is accorded administrative expense priority status. For example, § 503(b)(3)(A) grants priority for the expenses of a creditor who files a petition in an involuntary case. 11 U.S.C. § 503(b)(3)(A). These exceptions do not apply to Enterprises' claims, and, therefore, they are subject to the general rule in § 503 that only postpetition activities may qualify for administrative expense priority status. *See Szwak v. Earwood (In re Bodenheimer)*, 592 F.3d 664, 673 n.29 (5th Cir. 2009).

> The purpose of Section 503 is to permit the debtor's business to operate for the benefit of its prepetition creditors. In order to effectuate a successful reorganization, third parties must be willing to furnish postpetition goods or services on credit. Third parties might refuse to extend credit to debtors-in-possession for fear that their claims would not be paid, but an advance payment requirement would impede the debtor's business. Section 503 requires that such claims be given priority, therefore inducing third parties to extend credit and enhancing the likelihood of a successful reorganization.

*In re Coastal Carriers Corp.,* 128 B.R. 400, 403 (Bankr. D. Md. 1991). The incentive to do business with a debtor, obviously, does not exist if the debtor does not yet exist.

Accordingly, the Court finds that Enterprises has failed to meet its burden under § 503(b)(1)(A) of proving either that its claim arose postpetition or that it benefited Superior's estate.[7] Accordingly, Enterprises' request for an administrative expense priority claim with respect to the reimbursement of Armstrong's fees should be denied. The Court turns next to Enterprises' reimbursement claim for payment of Virden's legal services.

### 2. Virden

Enterprises maintains that by paying for Virden's legal services, "Enterprises provided Superior and its assets with security and protection. Without this expenditure of funds by Enterprises, Superior could not have continued as a functioning business and its assets would have been subject to attachment or execution." (Prop. Findings at 6).

Virden has never been approved by the Court as counsel for the estate under § 327. (Tellingly, Armstrong obtained Court-approval of his employment.) By invoking § 503(b), Enterprises sidesteps § 503(b)(2), discussed at length below, as well as the detailed provisions in the Code concerning the employment and compensation of attorneys and the payment of their fees. *See* 11 U.S.C. §§ 327, 328, & 330. To allow an administrative expense claim in the

---

[7]These qualification apply to administrative expenses awarded under § 503(b)(1)(A). As noted previously, there are other categories of administrative expenses that allow reimbursement for services incurred prepetition. *See, e.g.*, 11 U.S.C. § 503(b)(3)(A).

absence of any attempt by Virden to comply with § 327, would negate the necessity for prior court approval. *See In re Lickman*, 273 B.R. 691, 700 (Bankr. M.D. Fla. 2002).

The interplay between § 330 and § 503(b)(1)(A) was addressed in *Lamie v. United States*, 540 U.S. 526 (2004). The debtor's attorney had represented the debtor in its chapter 11 case with approval from the bankruptcy court under § 327. Later, he sought compensation under § 330 for legal services he provided the debtor after its case had been converted into a chapter 7 liquidation case. The bankruptcy court denied his § 330 application. (He was paid for the legal services he provided the debtor before the conversion.) The U.S. Supreme Court concluded, "[i]f the attorney is to be paid from estate funds under § 330(a)(1) in a Chapter 7 case, he must be employed by the trustee and approved by the court." *Lamie*, 540 U.S. at 538-39. Although the issue in *Lamie* was the construction of § 330(a)(1) and not § 503(b)(1), the Supreme Court made it clear that there is no statutory authority to award attorney's fees from estate funds unless the attorney is first approved by the bankruptcy court. Enterprises has failed to meet its burden under § 503(b)(1)(A), and its administrative priority claim with respect to the reimbursement of Armstrong's retainer should be denied.

Moreover, Virden's legal services conferred no discernible benefit to the estate. Enterprises points to the docket of the *4 H Lawsuit*, which reveals that 4 H did not attempt to execute the Final Judgment at any time prior to November 6, 2009, when Superior filed its bankruptcy petition. Enterprises acknowledges that there is no way to know why 4 H delayed its collection efforts against Superior. Certainly, 4 H could have taken steps to enforce the Final Judgment prior to the filing of the petition because Virden never posted a *supersedeas* bond[8] to suspend the execution of the Final Judgment during the pendency of the appeals. In short,

---

[8] *See* MISS CODE ANN. § 11-51-31; MISS. R. APP. P. 8.

Enterprises failed to establish what role the appeals played in preserving Superior's assets and presented no evidence as to the merits of the appeals. Regardless, it is clear that the appeals were motivated in large part by the self-interests of Lea Brent and Collins Brent, given the insider roles they held.

In addition, as mentioned previously in connection with the services provided by Armstrong, § 503(b)(1)(A) provides an incentive for others to do business with the insolvent debtor. This purpose is not served by Enterprises' voluntary payment of Virden's legal fees to pursue an appeal in litigation stayed by the filing of Superior's bankruptcy. Moreover, Enterprises' claim with respect to Virden's fees suffers from the same problem as its claim with respect to Armstrong's retainer, that is, Virden's fees were incurred prepetition, prior to the existence of Superior's bankruptcy estate.

For all of the above reasons, Enterprises has failed to satisfy its burden under § 503(b)(1)(A), and its administrative priority claim with respect to the reimbursement of Virden's fees should be denied. Last, the Court addresses whether Enterprises has met the requirements of § 503(b)(2) for the allowance of its claims.

**B.     § 503(b)(2)**

Enterprises alternatively relies upon § 503(b)(2), which provides for the allowance of administrative expense claims for "compensation and reimbursement awarded under section 330(a)" of the Code. Section 330(a), in turn, provides that a court may award a professional person employed under § 327 "reasonable compensation for actual, necessary services rendered by the . . . professional person, or attorney" and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a). Section 327 states that the trustee (or debtor in possession) may employ, with the court's approval, a professional to represent or assist him in carrying out his duties.

Under this statutory framework, a professional approved by the court under § 327 may receive compensation and reimbursement of expenses as determined by the court under § 330. Those expenses are then afforded priority status under § 503(b)(2).

Critical to § 503(b)(2) is the court's prior approval of the professional's employment. With respect to Virden's fees, there was no court approval of his continued employment as counsel for Superior, and Enterprises' claims for reimbursement do not satisfy this category of administrative expenses.

Moreover, unlike § 503(b)(1)(A), which provides that an "entity" may seek an allowance, § 503(b)(2), limits recovery to those entities who actually provided the services. Enterprises is not the professional who provided the services to Superior within the meaning of § 330(a). Instead, those services were provided by Armstrong and Virden. The Court, therefore, finds that Enterprises' claim for reimbursement of its administrative expenses under § 503(b)(2) should be denied.

## Conclusion

For the reasons stated herein, the Court finds that Enterprises has not carried its burden of persuasion with respect to its entitlement to administrative expense claims. Accordingly, the Court finds that the Motion is not well taken and should be denied.

IT IS, THEREFORE, ORDERED that the Motion is hereby denied.

SO ORDERED.

*/s/ Neil P. Olack*

Neil P. Olack
United States Bankruptcy Judge
Dated: November 21, 2012